UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| BRANDY DOUGLAS, individually as the surviving wife of DERRICK DOUGLAS, deceased, and as the Executor of the Estate of DERRICK DOUGLAS, <br><br> Plaintiff, <br> v. <br><br> HERC RENTALS, INC. and JLG INDUSTRIES, INC., <br><br> Defendants. | CIVIL ACTION NO. 1:19-CV-01084-JPB |

# ORDER

This matter is before the Court on Third-Party Defendant Daystar Infrastructure & Construction, Inc.'s ("Daystar") Motion for Summary Judgment [Doc. 104]. This Court finds as follows:

## RELEVANT PROCEDURAL HISTORY

On March 7, 2019, Brandy Douglas ("Plaintiff"), individually as the surviving wife of Derrick Douglas, deceased, and as the executor of the estate of Derrick Douglas, filed this action against HERC Rentals, Inc. ("Herc") and JLG Industries, Inc. [Doc. 1]. Thereafter, on April 19, 2019, Herc filed its Third-Party Complaint against Daystar. [Doc. 11]. With the Court's permission, Herc

amended its Third-Party Complaint on November 7, 2019. [Doc. 47]. On February 15, 2021, Daystar filed the instant Motion for Summary Judgment against Herc. [Doc. 104].

## BACKGROUND

The Court derives the facts of this case from Daystar's Statement of Material Facts, Herc's Statement of Material Facts and this Court's own review of the record. Because Daystar did not file a response to Herc's Statement of Material Facts, those facts are deemed admitted. LR 56.1(B)(3), NDGa. The facts of this case, for the purpose of adjudicating the instant motion, are as follows:

Daystar is a construction company that operates in the Atlanta, Georgia metro area. [Doc. 104-2, p. 2]. When Daystar needed to rent tools and other heavy equipment, it usually did so from Herc, an equipment rental company. Id. In fact, from August 29, 2005, through April 23, 2017—a period of twelve years—Daystar rented equipment from Herc on twenty-four separate occasions. [Doc. 110-2, p. 2].

On or about April 24, 2017, John Young, the owner of Daystar, contacted someone at Herc about renting a boom lift. [Doc. 104-2, p. 2]. In that conversation, they discussed the model and price of the lift to be rented and the date and time the lift needed to be delivered. [Doc. 110-1, p. 2]. They did not specifically discuss any other terms. [Doc. 104-2, p. 2]. The next day, on April

25, 2017, Herc delivered a JLG 800A articulating boom lift to Wellington Point Apartments in Smyrna, Georgia. [Doc. 110-2, p. 6]. Because no one from Daystar was present to accept delivery of the lift, the Herc delivery driver left the lift near the leasing office pursuant to Mr. Young's instructions. Id. No written rental agreement was signed before the lift was delivered. Moreover, the rental agreement was not left with the equipment upon delivery or otherwise delivered to Daystar.

Later in the day on April 25, 2017, Daystar employees arrived at the apartments to begin their work. Daystar had four personnel on site to operate and use the lift: Mr. Douglas, Norman Strozier, Ronald Stidwell and Mr. Young. Id. Because the employees had trouble operating the lift, they contacted Herc for assistance. Id. A Herc technician returned to the Wellington Point Apartments, and after ensuring that the lift was in working order, left so that Daystar could begin replacing fascia near the apartment building's roof. Id. at 7-8.

After the Herc technician left, Mr. Stidwell drove the lift approximately a block. Id. at 7. Mr. Stidwell originally parked the lift on a level concrete road but moved it to a steep grassy slope to get closer to the apartment building. Id. at 8. Thereafter, with Mr. Strozier and Mr. Douglas in the lift, the lift tipped over and

threw them to the ground. [Doc. 104-2, p. 4]. Mr. Strozier was injured, and Mr. Douglas died. Id.

On March 7, 2019, Plaintiff brought suit against Herc asserting various claims including negligence and negligent entrustment. [Doc. 110-2, p. 10]. Mr. Strozier also sued Herc asserting the same claims. Thereafter, Herc twice tendered its defense to Daystar contending that the rental agreement required indemnification. Daystar, on the other hand, refused to indemnify Herc arguing that it was not bound by any written rental agreement.

In this case, it is undisputed that at the time of the accident, neither Herc nor Daystar had signed a written rental agreement. Although a written rental agreement was delivered to Daystar sometime after the accident, it is also undisputed that Herc had not delivered a written rental agreement to Daystar at any time before the accident. The parties had, however, entered into twenty-four separate rental agreements over a twelve-year period. Ten of those rentals were for boom lifts, and Herc produced rental agreements for seven of them. Id. at 2. Significantly, those rental agreements are all identical. Moreover, the rental agreement delivered to Mr. Young after the accident is also identical to the seven previous rental agreements in Herc's possession.

4

The rental agreement at issue, and all the previous rental agreements, required Daystar to defend and indemnify Herc against claims of bodily injury, including death, which resulted from Daystar's use, possession or operation of the lift.  Specifically, the rental agreement's indemnification section provided:

> INDEMNIFICATION:  For and in additional consideration of providing the Equipment herein, CUSTOMER WILL DEFEND, INDEMNIFY AND HOLD HARMLESS HERC, ITS SUBSIDIARIES, PARENT COMPANY AND ITS AND THEIR OFFICERS, AGENTS AND EMPLOYEES, FROM AND AGAINST ALL LOSS, LIABILITY, CLAIM, ACTION OR EXPENSE, INCLUDING REASONABLE ATTORNEYS' FEES BY REASON OF BODILY INJURY, INCLUDING DEATH, AND PROPERTY DAMAGES, SUSTAINED BY ANY PERSON OR PERSONS, INCLUDING BUT NOT LIMITED TO EMPLOYEES OF CUSTOMER, AS A RESULT OF THE MAINTENANCE, USE, POSSESSION, OPERATION, ERECTION, DISMANTLING, SERVICING OR TRANSPORTATION OF THE EQUIPMENT OR MOTOR VEHICLE OR CUSTOMER'S FAILURE TO COMPLY WITH THE TERMS OF THIS AGREEMENT, EVEN IF SUCH LIABILITY RESULTS IN ANY PART FROM THE ORDINARY NEGLIGENCE OF HERC, ITS AGENTS OR EMPLOYEES, CUSTOMER WILL AT ITS EXPENSE COMPLY WITH ALL FEDERAL, STATE AND LOCAL LAWS AND REGULATIONS AFFECTING THE EQUIPMENT AND ITS USE, OPERATION, ERECTION, DESIGN AND TRANSPORTATION, INCLUDING WITHOUT LIMITATION, LICENSING AND BUILDING CODE REQUIREMENTS AND WILL DEFEND, INDEMNIFY AND HOLD HERC HARMLESS FROM ALL LOSS, LIABILITY OR EXPENSE RESULTING FROM ACTUAL OR ALLEGED VIOLATIONS OF ANY SUCH LAWS, REGULATIONS OR REQUIREMENTS.

[Doc. 11-2, p. 2].

The rental agreement at issue, and all the previous rental agreements, also contained a provision that it could be accepted either through a signature or "acceptance of the delivery of any part of the Equipment to be furnished." Id. at 2. Of the seven boom lift rental agreements that Herc produced, signatures appear on five of them. [Doc. 110-2, p. 13]. In other words, Daystar accepted the terms of those rental agreements through a signature. On the other two occasions, Daystar elected, as the rental agreements permitted, to accept the terms of the rental agreement by taking possession of the equipment it was renting. Herc provided evidence that when a written agreement was not signed upon delivery, Herc's drivers would provide the rental agreement to Herc's office staff to forward to the customer. Id. at 3.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(a), a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A material fact is any fact that "is a legal element of the claim under the applicable substantive law which might affect the outcome of the case." Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997). A genuine dispute exists when "the evidence is such

that a reasonable jury could return a verdict for the nonmoving party." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  Ultimately, "[t]he basic issue before the court on a motion for summary judgment is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'"  <u>Allen</u>, 121 F.3d at 646 (citation omitted).

The party moving for summary judgment bears the initial burden of showing that no genuine issue exists as to any material fact, "and in deciding whether the movant has met this burden the court must view the movant's evidence and all factual inferences arising from it in the light most favorable to the nonmoving party."  <u>Id.</u>  After the movant satisfies this initial burden, the nonmovant bears the burden of showing specific facts indicating summary judgment is improper because a material issue of fact does exist.  <u>Id.</u>  However, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party."  <u>Walker v. Darby</u>, 911 F.2d 1573, 1577 (11th Cir. 1990) (citation omitted).  If the record taken as a whole cannot lead "a rational trier of fact to find for the non-moving party, there is 'no genuine issue for trial.'"  <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986) (citation omitted).

# ANALYSIS

Herc asserts the following causes of action against Daystar: (1) Common Law and Contractual Indemnification; and (2) Breach of Contract. [Doc. 47]. In its Motion for Summary Judgment, Daystar argues that it does not have a contractual or common law duty to indemnify Herc.

### A. Contractual Indemnification

As stated immediately above, Daystar argues that it does not have a contractual duty to indemnify Herc. Essentially, Daystar concedes that it orally agreed to the price, location and type of equipment to be delivered to the work site. Daystar, however, contends that because Herc did not require a signature on the rental agreement before the accident and did not deliver the rental agreement before the accident, it cannot be bound by any terms that were not orally discussed even though every previous rental agreement contained an indemnification provision.

As a general rule, "a written, unsigned contract can be enforceable if the parties mutually assent to its terms." Aaron v. United Health Servs., Inc., 826 S.E.2d 442, 444 (Ga. Ct. App. 2019).

> In determining if parties had the mutual assent or meeting of the minds necessary to reach agreement, courts apply an objective theory of intent whereby one party's intention is deemed to be that meaning a reasonable man in the position of the other

> contracting party would ascribe to the first party's manifestations of assent, or that meaning which the other contracting party knew the first party ascribed to his manifestations of assent. In some instances, the only conduct of the parties manifesting intent is the express language of the agreement. In other instances, the circumstances surrounding the making of the contract, such as correspondence and discussions, are relevant in deciding if there was a mutual assent to an agreement, and courts are free to consider such extrinsic evidence.

Cox Broad. Corp. v. Nat'l Collegiate Athletic Ass'n., 297 S.E.2d 733, 737 (Ga. 1982) (internal citations omitted). Where the issue is whether a contract was formed, "the circumstances surrounding the making of the contract, such as correspondence and discussions, are relevant in deciding if there was a mutual assent to an agreement." Terry Hunt Constr. Co. v. AON Risk Servs., Inc., 613 S.E.2d 165, 169 (Ga. Ct. App. 2005). Importantly, "the question of whether a party has assented to the contract is generally a matter for the jury." Id.; see also Danfair Props. v. Bowen, 474 S.E.3d 295, 296 (Ga. Ct. App. 1996) ("The fact that [the defendant] contested whether there was a meeting of the minds on the terms . . . required that the issue be presented to the jury.").

Herc contends that this Court must consider the parties' course of dealings in determining whether Daystar assented to the terms in the written rental agreement. "A course of dealing is a sequence of previous conduct between the parties to a particular transaction which is fairly to be regarded as establishing a common basis

9

of understanding for interpreting their expressions and other conduct." Irvin Int'l, Inc. v. Riverwood Int'l Corp., 683 S.E.2d 158, 161 (Ga. Ct. App. 2009). According to the Restatement of Contracts, "[u]nless otherwise agreed, a course of dealing between the parties gives meaning to or supplements or qualifies their agreement." Restatement (Second) of Contracts § 223(2) (Am. L. Inst. 1981). Evidence of a prior course of dealing can thus establish a party's awareness of and consent to intended contractual terms. New Moon Shipping Co. v. MAN B&W Diesel AG, 121 F.3d 24, 31 (2d Cir. 1997). "Typically, a course of dealings analysis focuses on the actions of the parties with respect to a specific issue that the parties have encountered before," such that "a factfinder could reasonably infer that the parties have impliedly incorporated this understanding into their subsequent contracts." Id.

This Court finds that a jury issue exists as to whether the parties' course of dealings show that Daystar assented to the terms in the rental agreement, including the indemnification provision. A reasonable jury could find that the prior course of dealings between Herc and Daystar demonstrate that Daystar assented to all the terms of the rental agreement, even though on the day in question, the parties only discussed the type of equipment to be rented and the price. See In re Complaint of Moran Phila., 175 F. Supp. 3d 508, 523 (E.D. Pa. 2016) (recognizing that courts

have held that as few as four prior documents containing a term were sufficient to create a course of dealing).  Here, the evidence shows that Daystar and Herc repeatedly engaged in the same type of transactions for equipment rentals.  In fact, Daystar had rented equipment from Herc on twenty-four separate occasions over the course of twelve years, each time under a rental agreement with identical terms.  On prior occasions, Daystar either signed the rental agreement or accepted the agreement by receiving delivery of the equipment.  Importantly, in every prior agreement, Daystar was required to defend and indemnify Herc for claims of "bodily injury, including death" as a result of the "maintenance, use, possession, operation, erection, dismantling, servicing or transportation of the equipment."

     Based on these prior agreements, a reasonable jury could conclude that on the day in question, Daystar did not just agree to pay for the equipment, but also agreed to defend and indemnify Herc against personal injury claims that resulted from the use of the equipment.  A reasonable jury could also conclude that by accepting delivery of the equipment, Daystar agreed to all the terms of the rental agreement.  Based on the parties' course of dealings, a reasonable jury could find that Daystar had notice of the terms on which it was leasing the subject lift, and those terms included a requirement to indemnify Herc against claims like those asserted by Plaintiff.  At bottom, after considering the parties' course of dealings

and given that the issue of whether a party has assented to a contract is ordinarily one for the jury, summary judgment is inappropriate here. To the extent Daystar requests summary judgment as to Herc's contractual indemnity claim, the motion is **DENIED**.

### B. Common Law Indemnification

Daystar also argues that it does not have a common law duty to indemnify Herc. In Georgia, "[t]he duty to indemnify 'may arise by operation of law, independently of contract.'" Nguyen v. Lumbermens Mut. Cas. Co., 583 S.E.2d 220, 224 (Ga. Ct. App. 2003) (quoting S. Nitrogen Co. v. Stevens Shipping Co., 151 S.E.2d 916, 920 (Ga. Ct. App. 1966)). Common law indemnity arises where a person is compelled to pay damages because of negligence imputed to him as the result of a tort committed by another. Id. Importantly, "where there are no allegations of imputed negligence or vicarious liability," common law indemnity principles do not apply. Insituform Techs., Inc. v. Amerik Supplies, Inc., 850 F. Supp. 2d 1336, 1357 (N.D. Ga. 2012). "For example, joint tortfeasors cannot bring claims for common law indemnification against one another because their liability arises from their own tortious conduct." Id.

Herc asserts that Daystar's negligence is being imputed to it because Plaintiff sued for negligent entrustment. Herc argues that "[t]he basic premise of a

negligent entrustment claim is that the person operating the equipment is so unqualified to operate it that they should have not been given access to the equipment." [Doc. 110, p. 23]. Herc continues by stating that "one element of a negligent entrustment claim is that the person entrusted with the equipment 'is incompetent by reason of his age or inexperience, or his physical or mental condition, or his known habit of recklessness.'" Id. Ultimately, Herc contends that if "Plaintiff prevails on a negligent entrustment claim, Herc would be liable based on the negligence of Daystar and its employees who were in exclusive control of the subject lift at the time of the accident." Id. at 24. The Court disagrees.

In this case, Plaintiff has never sought to hold Herc liable on theories of vicarious or imputed liability. Instead, Plaintiff asserts that Herc is liable based on its own negligence in entrusting the lift to Daystar. Liability for negligent entrustment is based on a negligent act of the owner (Herc) in lending an instrumentality to another (Daystar) to use, with actual knowledge that the other is incompetent or habitually reckless. Zaldivar v. Prickett, 774 S.E.2d 688, 698 (Ga. 2015). Thus, the liability of an owner in a negligent entrustment action does not result simply from imputing the negligence of the person who is incompetent or habitually reckless. Ridgeway v. Whisman, 435 S.E.2d 624, 626 (Ga. Ct. App. 1993). In sum, this Court finds that Daystar is entitled to summary judgment as to

the common law indemnity claim because Daystar's negligence is not being imputed to Herc. Without imputed liability, there can be no basis for common law indemnity. To the extent Daystar's motion seeks summary judgment as to the common law indemnity claim, the motion is **GRANTED**.

## CONCLUSION

For the foregoing reasons, Daystar's Motion for Summary Judgment [Doc. 104] is **GRANTED IN PART AND DENIED IN PART**.

**SO ORDERED** this 27th day of August, 2021.

_____
J. P. BOULEE
United States District Judge