UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

BRANDY DOUGLAS, individually as the surviving wife of DERRICK DOUGLAS, deceased, and as the Executor of the Estate of DERRICK DOUGLAS,

    Plaintiff,

v.

HERC RENTALS, INC. and JLG INDUSTRIES, INC.,

    Defendants.

CIVIL ACTION NO.
1:19-CV-01084-JPB

# ORDER

This matter is before the Court on Herc Rentals, Inc.'s ("Defendant") Motion for Summary Judgment [Doc. 135]. This Court finds as follows:

## RELEVANT PROCEDURAL HISTORY

On March 7, 2019, Brandy Douglas ("Plaintiff"), individually as the surviving wife of Derrick Douglas, deceased, and as the executor of the estate of Derrick Douglas, filed this action against Herc and JLG Industries, Inc. [Doc. 1]. Plaintiff asserted the following claims against Defendant: (1) ordinary negligence; (2) negligent entrustment; (3) negligent bailment; (4) breach of express warranties; (5) breach of implied warranties; and (6) wrongful death. Id. On May 7, 2021,

Defendant moved for summary judgment as to all counts. [Doc. 135]. In her response, Plaintiff did not address Defendant's arguments pertaining to the counts involving the breach of express or implied warranties. [Doc. 139]. "Failure to respond to the opposing party's summary judgment arguments regarding a claim constitutes an abandonment of that claim and warrants the entry of summary judgment for the opposing party." Burnett v. Northside Hosp., 342 F. Supp. 2d 1128, 1140 (N.D. Ga. 2004). Because Plaintiff abandoned her warranty claims, Defendant's Motion for Summary Judgment is **GRANTED** as to Counts 4 and 5. Thus, in the analysis that follows, the Court will only analyze whether Defendant is entitled to summary judgment as to Plaintiff's claims for negligence, negligent entrustment and negligent bailment. The wrongful death claim is a derivative claim, and thus if one claim survives, the wrongful death claim also survives.

## BACKGROUND

The Court derives the facts of this case from Defendant's Statement of Material Facts [Doc. 135-2], Plaintiff's Response to Defendant's Statement of Material Facts [Doc. 139-2], Plaintiff's Statement of Additional Material Facts [Doc. 139-3] and Defendant's Response to Plaintiff's Statement of Additional Material Facts [Doc. 142]. The Court also conducted its own review of the record.

In accordance with the Local Rules, this Court will not consider unsupported facts.  The Court will, however, use its discretion to consider all facts that the Court deems material after reviewing the record.  The facts of this case, for the purpose of adjudicating the instant motion, are as follows:

Defendant is an equipment rental company.  Daystar is a construction company operating in Atlanta, Georgia.  [Doc. 135-2, p. 2].  Over an approximate twelve-year period and on twenty-four separate occasions, Daystar rented various pieces of equipment from Defendant.  Id.  Ten of the twenty-four rentals were for boom lifts.  Id.

On April 25, 2017, John Young, the owner of Daystar, rented a JLG 800A Boom Supported Aerial Platform (the "Subject Lift") from Defendant.  Id.  Daystar planned to use the Subject Lift to replace fascia boards near the roof of an apartment complex.  Id. at 5.  Per Mr. Young's instructions, Defendant's delivery driver delivered the Subject Lift to a location near the leasing office of the apartment complex.  Id. at 3.  No one from Daystar was present to accept delivery. Id.

Later in the morning after the Subject Lift was delivered, Mr. Young and Daystar's employees (Norman Strozier, Ronald Stillwell and Derrick Douglas) arrived to perform the fascia work.  Id.  No one from Daystar was able to get the

Subject Lift to operate, and as a result, Mr. Young called Defendant for assistance. Id. at 4.

Defendant dispatched John Adams, a service technician, to assist Daystar. Id. It was Mr. Adams's practice to show customers how the machines worked if they had questions about its operation. [Doc. 142, p. 11]. Mr. Adams determined that Mr. Young could not operate the Subject Lift because Mr. Young had failed to pull up the lock ring on the drive steer controller. Id. at 12. While on scene, Mr. Adams tested the lift and operated it without issue. [Doc. 139-2, p. 6]. He also showed Mr. Young how to use the ground controls and the controls from the basket. Id. at 7. Before leaving, Mr. Young assured Mr. Adams that he knew what he was doing. [Doc. 135-13, pp. 94-95]. Relatedly, Mr. Young had previously told the delivery driver that he had "operated these things 100 times before." [Doc. 135-7, p. 74].

After Mr. Adams left, Mr. Stidwell drove the lift approximately one block to the area where the fascia work was to be performed. [Doc. 135-2, p. 5]. Initially, Mr. Stidwell parked the Subject Lift on the road. [Doc. 142, p. 18]. When parked on the road, however, the boom did not reach the work area along the roofline of the apartment building. Id. As a result, Mr. Stidwell drove the lift onto a sloped grassy area closer to the apartment building. Id. at 19. With Mr. Strozier and Mr.

Douglas in the basket of the Subject Lift, one of the Daystar personnel attempted to raise the boom to the work area.  Id.  Thereafter, the Subject Lift made a clicking noise, and the Subject Lift tipped over.  Id.  As the Subject Lift tipped, Mr. Strozier and Mr. Douglas, neither of whom were wearing fall harnesses, were thrown from the lift.  [Doc. 135-2, p. 6].  Mr. Strozier suffered personal injuries, and Mr. Douglas died.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(a), a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  A material fact is any fact that "is a legal element of the claim under the applicable substantive law which might affect the outcome of the case."  Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997).  A genuine dispute exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  Ultimately, "[t]he basic issue before the court on a motion for summary judgment is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'"  Allen, 121 F.3d at 646 (citation omitted).

The party moving for summary judgment bears the initial burden of showing that no genuine issue exists as to any material fact, "and in deciding whether the movant has met this burden the court must view the movant's evidence and all factual inferences arising from it in the light most favorable to the nonmoving party." Id.  After the movant satisfies this initial burden, the burden shifts to the nonmovant who must then present evidence indicating that summary judgment is improper.  Id.  "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party."  Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990) (citation omitted).  If the record taken as a whole cannot lead "a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted).

## ANALYSIS

### A. Negligence

Plaintiff argues that Defendant was negligent in providing rental services to Daystar.  To prevail on a claim of negligence, a plaintiff must show:  (1) "the existence of a duty on the part of the defendant," (2) "a breach of that duty," (3) "causation of the alleged injury," and (4) "damages resulting from the alleged

breach of the duty." Diamond v. Dep't of Transp., 756 S.E.2d 277, 281 (Ga. Ct. App. 2014).

Defendant contends that the negligence claim fails because it did not owe a duty to Mr. Douglas. "Whether a duty exists upon which liability can be based is a question of law." City of Rome v. Jordan, 426 S.E.2d 861, 862 (Ga. 1993). "If a defendant owes no legal duty to the plaintiff, there is no cause of action in negligence." Dupree v. Keller Indus., Inc., 404 S.E.2d 291, 294 (Ga. Ct. App. 1991). Indeed, "[n]o matter how innocent the plaintiff may be, he is not entitled to recover unless the defendant did something that it should not have done, or failed to do something that it should have done pursuant to the duty owed the plaintiff." City of Douglasville v. Queen, 514 S.E.2d 195, 197-98 (Ga. 1999).

In this case, Plaintiff contends that Defendant's duty to Mr. Douglas arises from three different industry standards pertaining to boom-supported elevated work platforms which are set forth by the American National Standard Institute ("ANSI"). Plaintiff also asserts that Defendant had a common-law duty to Mr. Douglas.

　1. Industry Standards

Under Georgia law, "'violation of . . . privately set guidelines . . . *does not establish negligence*.'" Spearman v. Ga. Bldg. Auth., 482 S.E.2d 463, 465 (Ga. Ct.

7

App. 1997) (quoting <u>Manley v. Gwinnett Place Assocs.</u>, 454 S.E.2d 577, 579 (Ga. Ct. App. 1995)). However, such a violation "may be considered as illustrative of ordinary negligence." <u>Id.</u> at 464. As stated above, Plaintiff argues that Defendant's violation of three different industry standards shows that Defendant was negligent. Those standards are discussed immediately below.

      a. Familiarization

Plaintiff argues that Defendant is liable for negligence because it failed to familiarize Daystar as required under section 5.8 of the ANSI standards. In pertinent part, section 5.8 states that

> [u]pon delivery by . . . lease . . . , the dealer shall have the responsibility with the person designated by the receiving entity for accepting the aerial platform to: (1) Identify the weather resistant compartment (for manual(s) storage)[,] (2) Confirm the manual(s), as specified by the manufacturer, are on the aerial platform[,] (3) Review control functions[, and] (4) Review safety devices specific to the model aerial platform being delivered.

[Doc. 135-2, pp. 8-9].

The plain language of this ANSI standard shows that Defendant only had a duty to provide familiarization to "*the person designated* by the receiving entity for accepting the aerial platform." In this case, it is undisputed that Daystar did not designate Mr. Douglas as the person who would accept the Subject Lift or receive the familiarization. Importantly, Plaintiff fails to provide any case law which

8

would show that the duty Defendant owed to the person designated to receive the Subject Lift extended to all employees of Daystar who might operate the boom lift or otherwise be involved with its operation. In fact, one Georgia case provides that ANSI standards do not raise a common law duty to remote users. Dupree, 404 S.E.2d at 295.[1] Thus, contrary to Plaintiff's claim, Defendant did not owe a duty to familiarize Mr. Douglas with the Subject Lift. See Arthur v. MacAllister Mach. Co., 83 N.E.3d 783, 787 (Ind. Ct. App. 2017) (holding that section 5.8 does not extend a defendant's duty to all employees who might operate the boom lift).[2]

     b. Failure to Offer Training

Plaintiff also contends that Defendant failed to comply with section 5.7 of the ANSI standards. Pursuant to section 5.7, the dealer "shall offer appropriate training to facilitate owners, users, and operators to comply with requirements set

---

[1] Dupree involved an employee who was injured by a hydraulic punch press. 404 S.E.2d at 292. The employee sued the company who sold the punch press to his employer. Id. The employee argued that the seller had a duty to conform to industry standards and breached the duty when it sold the press to the employer. Id. at 293. Ultimately, the court determined that the ANSI standards could not establish a duty, since the plain language applied only to the relationship between employees and their employers, not between employees and the company which sold the machinery to the employer. Id. at 295. Although Defendant owed Daystar a duty, no such duty existed between Defendant and Daystar's employees.

[2] This Court recognizes that Arthur is not binding authority. However, it was cited extensively by Defendant in its opening brief, and Plaintiff never makes any effort to distinguish the case or explain why this Court should follow a different line of reasoning. Instead, Plaintiff cites to no cases and relies exclusively on expert testimony to establish a duty.

forth in this standard regarding the inspection, maintenance, use, application, and operation of the aerial platform." [Doc. 135-2, p. 8]. Plaintiff asserts that this provision required Defendant to affirmatively offer training to Daystar at the time of delivery, which it did not do. Defendant, on the other hand, argues that any training obligation was satisfied because training was available if requested.

Regardless of whether Defendant should have affirmatively offered the training or whether having training available was enough, the duty created by this standard is owed to Daystar, not Mr. Douglas. The Court agrees with the Arthur court that the plain language "does not affirmatively obligate [Defendant] to offer training directly to [Daystar's] employees who might operate the lift." Arthur, 83 N.E.3d at 787.

    c. Failure to Offer the Right Tool for the Job

Lastly, Plaintiff argues that Defendant is liable for negligence because it failed to comply with section 5.1 of the ANSI standards. Section 5.1 provides that

> [s]ound principles of safety, training, inspection, maintenance, application, and operation consistent with all data available regarding the parameters of intended use and expedited environment shall be applied in the training of operations, in maintenance, application, safety provisions and operation of the aerial platform with due consideration of the knowledge that the unit will be carrying personnel.

[Doc. 135-2, p. 8]. More specifically, Plaintiff contends that Defendant breached this provision because it did not ask Daystar how and where the Subject Lift was going to be used and operated. While this provision references "all data available," there is no indication that this creates a duty for Defendant to inquire about how or where the lift was going to be used or required that Defendant offer an alternative piece of equipment. At bottom, this Court finds that this section does not create an affirmative duty that Defendant inquire into the intended use/environment for the Subject Lift. Arthur, 83 N.E.3d at 788.

Ultimately, none of the industry standards identified above show that Defendant owed a particular duty to Mr. Douglas. As recognized in Arthur, this conclusion is bolstered by the ANSI standards that apply to Users. A "User" is defined as an entity that has care, control and custody of the aerial platform and may also be "the employer of the operator." Id. Here, Daystar is the only entity that falls within the definition of User as Daystar had care, control and custody of the Subject Lift and served as Mr. Douglas's employer. Notably, section 7.6 provides that Daystar, as the User, "shall ensure" that the operator is familiar with the boom lift being used. Id. This makes sense because Daystar "was in the best position to know which of its employees might be operating the [Subject Lift] and in what applications/environments the equipment would be used." Id. In this case,

Defendant was merely required to provide training if requested and familiarize a "designated person." Id. "In short, the provisions that apply to [Defendant] as a dealer do not create a duty owed by [Defendant to Mr. Douglas] in terms of training and knowledge of the application in which the [Subject Lift] was to be operated." Id. Plaintiff's failure to show any legal duty imposed on Defendant toward Mr. Douglas requires that summary judgment be granted. Accordingly, to the extent Defendant seeks summary judgment as to the negligence claim using the industry standards, the Motion for Summary Judgment is **GRANTED**.

    2. Common Law

In addition to citing ANSI standards, Plaintiff also argues that Defendant was negligent in rendering its rental services as a matter of common law. "Even under a theory of common law negligence, [Plaintiff] must establish that [Defendant] owed a duty to [Mr. Douglas]." Id. at 789. As explained below, this Court finds that the restatement provisions cited by Plaintiff do not support a finding of duty on the part of Defendant.

Plaintiff contends that Defendant is liable under section 388 of the Restatement (Second) of Torts because Defendant knew that the lift in question presented the risk of tip-over under Daystar's foreseeable use. Section 388, which deals with the failure to warn of dangerous chattel states that:

> One who supplies directly or through a third person a chattel for another to use, is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be in the vicinity of its probable use, for bodily harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier (a) knows, or from facts known to him should realize, that the chattel is or is likely to be dangerous for the use for which it is supplied; (b) and has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition; and (c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be so.

Dupree, 404 S.E.2d at 295–96.

Despite Plaintiff's arguments to the contrary, no evidence exists that Defendant knew the lift in question presented the risk of tip-over under Daystar's foreseeable use. As such, this section of the Restatement (Second) of Torts is inapplicable.

Plaintiff also argues that Defendant assumed a duty under section 324A of the Restatement (Second) of Torts to provide ANSI-compliant training to the entire crew when Mr. Adams, the technician, returned to the worksite. Section 324A provides:

> [o]ne who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if (a) his failure to exercise reasonable care increases the risk of such harm, or (b) he has undertaken to perform a duty owed by the

      other to the third person, or (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

The Georgia Court of Appeals has held that section 324A applies "only to the extent that the alleged negligence of the defendant 'exposes the injured person to a greater risk of harm than had existed previously.'" Herrington v. Deloris Gaulden, 751 S.E.2d 813, 816 (Ga. 2013). "Put another way, the mere failure to abate a hazardous condition—without making it worse—does not trigger the application of [s]ection 324A." Id.

    In this case, the record does not support Plaintiff's argument that Mr. Adams assumed a duty to train Mr. Douglas or any of Daystar's employees.[3] Instead, the record shows that Mr. Adams returned to the worksite to assist Mr. Young in troubleshooting. Once Mr. Adams ensured that the Subject Lift was in good working order, he left. Moreover, Mr. Young told Defendant that he did not need training and that he had operated lifts over 100 times. Under these facts, this provision of the Restatement (Second) of Torts does not apply. As a result, this Court finds that Defendant did not undertake a duty to provide any training to Mr. Young or any other Daystar employee.

---

[3] The Court also notes that Plaintiff never alleged anywhere in her Complaint that Defendant voluntarily undertook a duty to train pursuant to the common law. "A plaintiff may not amend her complaint through argument in a brief opposing summary judgment." Gilmore v. Gates, McDonald & Co., 382 F.3d 1312, 1315 (11th Cir. 2004).

14

As to common law negligence, Plaintiff has cited no compelling authority that imposes a duty on Defendant to inquire into the intended use of the Subject Lift or to train Daystar's employees. Thus, because the duty element is not satisfied, Defendant's Motion for Summary Judgment as to the negligence claim is **GRANTED**.

**B. Negligent Entrustment**

In Count 2, Plaintiff asserts that Defendant negligently entrusted the Subject Lift to Daystar. The negligent entrustment doctrine provides that "a party is liable if he entrusts someone with an instrumentality, with *actual knowledge* that the person to whom he has entrusted the instrumentality is incompetent by reason of his age or inexperience, or his physical or mental condition, or his known habit of recklessness." Williams v. Ngo, 656 S.E.2d 193, 195 (Ga. Ct. App. 2007) (quoting Danforth v. Bulman, 623 S.E.2d 732, 736 (Ga. Ct. App. 2005)). Notably, a plaintiff must show "actual knowledge" that the person entrusted is incompetent or reckless. Webb v. Day, 615 S.E.2d 570, 572 (Ga. Ct. App. 2005). It is not sufficient for a plaintiff to show constructive knowledge ("i.e., that the entrustor should have known the person being entrusted was not competent."). Id. at 573.[4]

---

[4] In her brief, Plaintiff argues that negligent entrustment may be based upon constructive knowledge. This is an incorrect statement of the law. "The doctrine of negligent entrustment does not apply 'merely because the owner, by exercise of reasonable care

Plaintiff's negligent entrustment claim fails for two reasons. First, the claim fails because Plaintiff did not show that Defendant had actual knowledge that Mr. Young was incompetent. In this case, it is undisputed that Defendant entrusted the Subject Lift to Mr. Young. To succeed, Plaintiff must thus show that Defendant had actual knowledge that Mr. Young was incompetent to operate the Subject Lift. Plaintiff did not make the required showing. While it is true that Mr. Young could not initially get the Subject Lift to drive, Mr. Young told Defendant's technician that he had used lifts more than 100 times in the past. Moreover, Defendant's technician testified that the inability to release the drive steer control (which was preventing the machine from driving) did not alarm him because Mr. Young seemed very experienced. [Doc. 135-13, p. 95]. Under these facts, Plaintiff failed to show that Defendant had actual knowledge of Mr. Young's incompetence.

Even if Plaintiff could show that Defendant knew that Mr. Young was incompetent, Plaintiff's claim still fails because Mr. Young was not operating the Subject Lift nor even present when the accident happened. Instead, Strozier, Stidwell and Douglas were the operators of the Subject Lift at the time of the accident. It is undisputed that Defendant had no knowledge that any of these

---

and diligence, could have ascertained the fact of the incompetence of the driver.'" Williams, 656 S.E.2d at 195 (quoting Roebuck v. Payne, 136 S.E.2d 399, 401 (Ga. Ct. App. 1964)).

individuals were incompetent to operate the Subject Lift.  It is likewise undisputed that Defendant did not entrust the Subject Lift to these individuals.  Rather, it was Mr. Young—not Defendant—who entrusted the Subject Lift to his employees.  Id. at 572 (holding that liability extends to a person who had control over the use of a vehicle and negligently entrusted it to another even though not the owner of the vehicle).  Ultimately, because Defendant did not entrust the Subject Lift to Strozier, Stidwell or Douglas, who were the operators of the Subject Lift at the time of the accident, the undisputed facts preclude a claim for negligent entrustment against Defendant.  To the extent Defendant seeks summary judgment as to Plaintiff's negligent entrustment claim, Defendant's motion is **GRANTED**.

### C. Negligent Bailment

In Count 3, Plaintiff contends that Defendant breached its duty as a bailor because the Subject Lift was delivered with a tilt alarm that did not work. O.C.G.A. § 44-12-63 sets forth three different obligations of a bailor:

> (1) To do no act to deprive the hirer of the use and enjoyment of the chattel during the period of the bailment; (2) To keep the thing in suitable order and repair for the purposes of the bailment; and (3) To warrant the right of possession and that the thing bailed is free from any secret fault rendering it unfit for the purposes for which it is hired.

"The bailor's liability for defective rented property arises partly from [an] implied warranty created by the legal relationship alone and partly as a breach of the

17

common law duties in negligence owed to the public in general." Perton v. Motel Props., Inc., 497 S.E.2d 29, 32 (Ga. Ct. App. 1998).

Defendant argues that it is entitled to summary judgment because Plaintiff has failed to come forward with expert evidence that the tilt alarm was defective. As an initial matter, this Court does not find that expert testimony is required in this case. See Stanley v. Toyota Motor Sales, U.S.A., Inc., No. 3:07-CV-08, 2008 WL 4664229, at *3 n.5 (M.D. Ga. Oct. 20, 2008) (recognizing that a breach of implied warranty claim may not require expert testimony and that the plaintiff has the burden of pointing out "*some* evidence, expert or otherwise, to substantiate his claims"). In this case, the record contains evidence that the tilt alarm was not defective on the day in question. For instance, post-incident testing of the Subject Lift and its tilt alarm showed that the tilt alarm was functional. The record, however, also contains evidence that the tilt alarm was not functional at the time of the incident. Specifically, three different eyewitnesses[5] testified that they did not remember hearing the tilt alarm sound. The absence of an alarm sounding gives

---

[5] Defendant contends that the only evidence Plaintiff presented was Mr. Strozier's testimony that he could not recall whether the tilt alarm was sounding. Defendant states that "the fact that Strozier, who undeniably experienced a traumatic event and serious head injuries, cannot recall hearing the tilt alarm cannot overcome the uncontested testimony . . . that the tilt alarm *was* operational." [Doc. 141, p. 22]. Defendant misstates the evidence. In fact, Plaintiff presented testimony of three different eyewitnesses, none of whom heard the tilt alarm sound.

rise to the reasonable inference that the tilt alarm was not functioning properly. Accordingly, this Court finds that a genuine issue of material fact exists as to whether the tilt alarm was defective on the day in question, and therefore Defendant's Motion for Summary Judgment as to Plaintiff's negligent bailment claim is **DENIED**.

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment [Doc. 135] is **GRANTED IN PART AND DENIED IN PART**.  Because the dispositive motions have been decided and discovery is closed, the Court **ORDERS** the case to mediation.  The parties may retain a private mediator at their own expense or ask this Court to appoint a United States Magistrate Judge to conduct the mediation.  The parties are not required to pay for mediation by a Magistrate Judge.  No later than April 14, 2022, the parties must advise the Court of their mediation preference.  The parties shall have through and including June 14, 2022, to complete the mediation.

In light of the upcoming mediation, the Clerk is **DIRECTED** to **ADMINISTRATIVELY CLOSE** this case for docket management purposes.  Administrative closure will not prejudice the rights of the parties to this litigation in any manner nor preclude the filing of documents.  Within five days after the

mediation, the parties shall notify the Court as to whether mediation was successful. If mediation fails to result in a settlement, the Court will reopen the case and schedule trial.

    **SO ORDERED** this 31st day of March, 2022.

                                            J. P. BOULEE
                                            United States District Judge